# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ADAPTIVE SPECTRUM AND SIGNAL ALIGNMENT, INC., <br><br> Plaintiff, <br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendant. | Case No. 2:24-cv-00124-JRG-RSP <br><br> JURY TRIAL DEMANDED <br><br> ▇▇▇▇▇▇▇▇ <br><br> **<u>REDACTED VERSION</u>** |

### *CORRECTED* PLAINTIFF'S MOTION TO COMPEL <u>DEFENDANT'S PRODUCTION OF DOCUMENTS</u>

## TABLE OF ABBREVIATIONS

| ASSIA or Plaintiff | Plaintiff Adaptive Spectrum and Signal Alignment, Inc. |
|---|---|
| Charter or Defendant | Defendant Charter Communications, Inc. |
| '996 Patent | U.S. Patent No. 7,809,996 |
| '398 Patent | U.S. Patent No. 10,848,398 |
| '654 Patent | U.S. Patent No. 11,050,654 |
| '108 Patent | U.S. Patent No. 11,477,108 |
| '313 Patent | U.S. Patent No. 11,770,313 |
| Asserted Patents | Collectively, the '996, '398, '654, '108, and '313 Patents |
| CMTS | Cable Modem Termination Systems |
| CCAP | Converged Cable Access Platforms |
| PMA | PMA Profile Management Application ("PMA") of DOCSIS 3.1 |
| PNM | Proactive Network Maintenance/Management |
| FAC | Plaintiff ASSIA's First Amended Complaint for Patent Infringement, filed July 1, 2024, filed in the consolidated case file, *Adaptive Spectrum and Signal Alignment, Inc. v. Charter Commc'ns, Inc.*, Case No. 2:24-cv-00029-JRG-RSP (E.D. Tex. July 1, 2024), ECF No. 70. |

This case has been pending for almost ten months. More than five months ago, Charter was obligated to start producing documents relevant to the claims and defenses in this case, and its P.R. 3-4(a) documents were due two months ago. The deadline for Charter to complete substantial document production is less than seven weeks away. Yet to date Charter has produced ***only ▮ documents*** (of which ▮ are publicly available standards),[1] which do not satisfy its P.R. 4-3(a) obligations, and Charter has not produced any financial data or other damages-related documents.

Since October, ASSIA repeatedly has written to and conferred with Charter regarding Charter's delay in producing relevant information. Each time, Charter acknowledged that it has additional relevant documents, but refused to disclose when it will produce them. Instead, Charter offered only generic statements that it intends to produce some documents on a rolling basis at some unspecified time in January and intends to complete its production two-weeks before the January 31 substantial completion deadline. There is no dispute that the information ASSIA seeks is relevant, and there is no basis for Charter's continued delay, which prejudices ASSIA.

Accordingly, ASSIA requests that the Court order Charter to, within seven days of the Court's Order, (1) provide all responsive technical documents related to Categories 1, 14-15, 17, 21-28, and 41 of ASSIA's Requests (attached as Ex. A) and fully comply with P.R. 3-4(a); (2) provide all responsive damages documents related to Categories 30-35, 63-64, 75-76, and 82; and (3) provide all responsive technical and damages documents provided to/from Charter's relevant third-party suppliers related to Category 11.

## I.  FACTUAL BACKGROUND

ASSIA filed this action in February 2024, accusing Charter of infringing the Asserted Patents, which are generally directed to systems and methods for controlling and optimizing

---

[1] Charter also produced venue documents and P.R. 3-4(b) & 4-2 prior art and extrinsic evidence.

1

performance in a communication system or network. ASSIA alleges that the infringing activities include the manufacture, use, sale, importation, and/or offer for sale of Spectrum-brand cable, Internet, and Wi-Fi products and/or services for operation on Charter's networks (the "Accused Instrumentalities"). FAC, ¶¶ 40-51, 64-73, 86-103, 117-131, 145-155, The "Accused Functionalities" of the Spectrum cable, Internet, and/or Wi-Fi products and services at issue involve at least the following: (1) DOCSIS 3.1 and PMA (or any technology for selecting profiles for cable modems and set-top boxes as part of network management); (2) OpenSync and use of remote telemetry to manage WAN/LAN networks through implementation or support of DOCSIS 3.1 (and supplemental features such as PMA and PNM); (3) OpenSync and use of a downloadable agent to gather and provide LAN and/or WAN network performance/telemetry data to a network management system; (4) WiFi steering (for example by using the Wi-Fi Agile Multiband standard or OpenSync's Adaptive Wi-Fi); and (5) Wi-Fi optimization utilizing OpenSync's Adaptive Wi-Fi/Wi-Fi optimizer.[2]

    Charter was to start producing all documents in its possession or control "that are relevant to the pleaded claims or defenses" by June 26, 2024, and to do so "[w]ithout awaiting a discovery request." Dkt. 21, ¶3; Dkt. 40 at 7. Charter's P.R. 3-4(a) production was due October 7, 2024. Dkt. 40 at 6. The deadline to complete substantial document production is January 31, 2024. *Id*. By the Court's order, "[c]ounsel are expected to make good faith efforts to produce all required documents as soon as they are available and not wait until the substantial completion deadline." *Id*.

    Yet, by the P.R. 3-4(a) October 7 deadline, Charter had produced only ▇ documents total (other than venue-related discovery), consisting of (a) ▇ communications with ASSIA or agreement between ASSIA and Charter; (b) ▇ agreements between Charter and a subset of its

---

[2] If the Court requests, ASSIA will provide its operative infringement contentions.

relevant third-party suppliers; (c) ▇ publicly available standards; and (d) only ▇ Charter technical documents. The Charter technical documents (even considering the additional public standards) do not fully disclose the operation, architecture, and configuration of all aspects and elements of the Accused Instrumentalities and Functionalities (and internally refer to a vast swath of additional relevant documents and code that have not been provided).

On October 22, ASSIA notified Charter of significant deficiencies in Charter's document production and specifically identified 105 categories of materials relevant to the claims and defenses for which Charter had not produced sufficient or, in most cases, any information. Ex. A. On October 30, Charter responded that it was "evaluating the categories" and "intend[ed] to supplement [its] production for a number of them." Ex. B. On November 5, ASSIA again wrote Charter asking for a date certain by which Charter intended to supplement its production and an identification of which categories will be covered in the supplementation. Charter did not respond. The following week ASSIA wrote to Charter, again, to request a conference. The parties exchanged additional emails and informally conferred on November 14, during which Charter indicated it would make a "small supplemental production this week" and "will produce additional documents related to [category] requests in your letter." Ex. B at 1. On November 19, Charter produced just ▇ additional technical documents. In multiple follow up emails and discussions, ASSIA again requested a date certain for Charter's production. Charter refused to commit to a date, stating only: "Charter intends to satisfy all of our discovery obligations in this case in the normal course" are working "to *gather* relevant documents." Ex. B at 2 (emphasis added). Charter finally agreed to a formal conference with lead and local counsel on December 4, in which Charter merely repeated that it was "*searching* for relevant documents responsive to ASSIA's requests"

3

and "will produce them on a rolling basis in advance of the substantial completion of document production deadline." *Id.* (emphasis added).

In short, almost a year into this case, Charter still has not even collected all the relevant documents. Charter has not produced technical documents sufficient to shows its implementations of the Accused Instrumentalities and Functionalities. Charter has not produced all agreements between it and its relevant third-party suppliers, nor any other documents provided to or received from Charter's third-party suppliers concerning relevant components deployed in the Accused Instrumentalities. Additionally, Charter has not produced any financial data or other relevant marketing and damages-related documents. Charter does not dispute that these missing documents are relevant and cannot provided any excuse for not timely satisfying its discovery obligations.

## II.     The Court Should Compel Charter to Comply with P.R. 3-4(a)

Charter cannot refute that P.R. 3-4(a) requires disclosure of source code and other documentation describing Charter's implementation of the Accused Instrumentalities. Additionally, ASSIA specifically requested source code and technical documents about the accused Spectrum-brand cable, Internet, and Wi-Fi services, including their architecture, components, software, operation, and configuration relating to the Accused Functionalities. Ex. A (Categories 1, 14-15, 17, 21-28, and 41). Despite multiple telephonic conferences and written correspondence and months of prodding, Charter still has not complied with its P.R. 3-4(a) obligations and acknowledges that it has not produced responsive technical documents related to ASSIA's technical document requests. For example, although Charter's production includes some technical documents ███████████████████████████████████████ it lacks sufficient information to disclose the operation, characteristics, and functionality of at least the following relevant technologies and components: (1) the My Spectrum App mobile application; (2) Charter's CCAP/CMTS servers, PNM and PMA servers, and CMs that implement

4

the selection of profiles based on performance measurements; (3) Charter's Advanced Wi-Fi routers and Wi-Fi pods that support Wi-Fi steering or Wi-Fi Optimization (for example using Wi-Fi Agile Multiband, OpenSync's Adaptive Wi-Fi, and/or or Wi-Fi optimizer; and (4) Charter's Wi-Fi CPE that implements collection and/or transmission of LAN and/or WAN performance information and/or remote telemetry data.[3] Charter cannot unilaterally "limit discovery relating to technical operation to what they deem Plaintiff needs." *LG Elecs., Inc. v. Hitachi, Ltd.*, No. 5:07-cv-90, 2009 WL 10677426, at *3 (E.D. Tex. Mar. 2, 2009). Instead, Charter must produce "all other relevant materials reasonably needed for Plaintiff to understand *for itself* how the technology at issue operates and functions." *Edward D. Ioli Tr. v. Avigilon Corp.,* No. 2:10-cv-605-JRG, 2012 WL 5830711, at *4 (E.D. Tex. Nov. 16, 2012) (emphasis in original).[4] ASSIA thus requests Charter be compelled to (1) produce all responsive technical documents related to Categories 1, 14-15, 17, 21-28, and 41 and to otherwise fully comply with P.R. 3-4(a).

**III.    The Court Should Compel Charter to Produce Financial and Damages Documents**

ASSIA specifically requested financial data and damages-related documents concerning the Accused Instrumentalities or any portion or feature thereof, including documents concerning (1) technical and economic benefits (Categories 30-35); (2) financial data (Category 63); (3) usage data (Category 76); and (4) business plans, financial forecasts, and other competitive analyses (Categories 64, 75, and 82) relating to the Accused Instrumentalities and Functionalities. Ex. A.

---

[3] Charter also made a limited amount of source code available for inspection, for which ASSIA has specifically identified various deficiencies and about which the parties are still conferring, with Charter promising to make additional code available before December 25, 2024.

[4] Based on publicly available information, Charter's technical production remains staggeringly deficient considering that in *Entropic*, which Charter agrees involved at least some of the same accused technologies and services, Charter produced more than 12,000 documents after the close of expert discovery and some undisclosed number before the close of fact discovery. Agreed Mot. to Amend Docket Control Order at 1, *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:22-cv-00125-JRG (E.D. Tex. Aug. 23, 2023), ECF 153.

5

The information that ASSIA seeks is routinely relevant in patent infringement suits, and thus ASSIA requests that Charter be compelled to produce it.

Charter has not disputed that the above requests seek relevant information and has repeatedly assured ASSIA it will supplement its production with relevant financial and damages-related information before the substantial completion deadline. But that is not sufficient and falls far short of meaningful engagement in the discovery process. As this Court has previously admonished, although "there is a duty to supplement discovery responses that necessitates ongoing searches, the duty to supplement is not an excuse for delay as to initiating searches, as has occurred here." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-cv-00456-JRG, 2018 WL 4620634, at *2 (E.D. Tex. Apr. 27, 2018). Consequently, courts regularly compel production when parties agree to produce documents but thwart the discovery process by dragging their feet and waiting until the substantial completion deadline, like Charter has done here.

## IV. The Court Should Compel Charter to Produce Relevant Third-Party Documents

Charter has identified ▉▉▉▉▉▉▉ third-party vendors that supply relevant components and technology deployed in the Accused Instrumentalities. Technical, marketing, and financial documents concerning those third-party components and technology are directly relevant to at least infringement and damages issues. ASSIA has specifically requested this information, as well as the associated agreements and communications (design specifications, SOWs, change requests, etc.) between Charter and those third parties. Ex. A (Category 11). However, to date, Charter has not produced agreements with ▉▉▉▉▉▉▉▉▉▉ of those third parties: ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Further, Charter has not produced any documents from or to, nor communications with, any of its relevant third parties concerning the design, development, configuration, or implementation of the relevant components, any cost data, or any marketing materials concerning the technical and/or economic benefits of the components

6

and technology provided by these third parties. Yet documents produced by Charter in venue discovery indicate that ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

Dkt. 35-9 at CHARTER_ENTROPIC00007936). Accordingly, Charter should be compelled to produce comprehensive technical documents, agreements, financial (including cost) data, documents reflecting the volume of deployed (as compared to procured) third-party components, and any other marketing/damages information concerning technical and economic benefits or value related to the relevant components of the Accused Instrumentalities supplied by its third-party vendors, including all responsive documents related to Category 11.

## CONCLUSION

Charter has failed to provide the discovery required by this Court's Discovery Order and Local Patent rules. For all the foregoing reasons, ASSIA requests the Court to compel Charter to produce the materials requested by ASSIA and otherwise comply with its discovery obligations.

December 16, 2024                    Respectfully submitted,

/s/ *Nicole Glauser*

Robert F. Kramer
CA Bar No. 181706 (Admitted E.D. Texas)
rkramer@krameralberti.com
David Alberti
CA Bar No. 220265 (Admitted E.D. Texas)
dalberti@krameralberti.com
Sal Lim
CA Bar No. 211836 (Admitted E.D. Texas)
slim@krameralberti.com
Russell S. Tonkovich
CA Bar No. 233280 (Admitted E.D. Texas)
rtonkovich@krameralberti.com
Hong S. Lin
CA Bar No. 249898 (Admitted E.D. Texas)
hlin@krameralberti.com
Jeremiah A. Armstrong
CA Bar No. 253705 (*pro hac vice*)
jarmstrong@krameralberti.com
**KRAMER ALBERTI LIM**
**& TONKOVICH LLP**
950 Tower Ave., Ste 1725
Foster City, CA 94404
Telephone: 650 825-4300
Facsimile: 650 460-8443

Nicole Glauser
Texas State Bar No. 24050694
nglauser@krameralberti.com
**KRAMER ALBERTI LIM**
**& TONKOVICH LLP**
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (737) 256-7784
Facsimile: (650) 460-8443

Melissa Richard Smith
Tex. State Bar No. 24001351
melissa@gillamsmith.com
**GILLAM & SMITH, LLP**
303 South Washington Ave.
Marshall, TX 75670
Telephone: 903-934-8450

8

Facsimile: 903-934-9257

*Attorneys for Plaintiff*
*Adaptive Spectrum and Signal Alignment, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel of record who are deemed to have consented to electronic service on December 16, 2024, and any confidential version served by electronic mail.

*/s/ Nicole Glauser*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), we hereby certify that the undersigned complied with the meet and confer requirement of Local Rule CV-7(h). A telephonic meeting was held on December 4, 2024. The parties could not agree on a resolution to the issues discussed above. Further, this motion is opposed.

*/s/ Nicole Glauser*

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

Pursuant to Local Rule CV-5, I hereby certify that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 22) entered in this case on July 22, 2024.

*/s/ Nicole Glauser*