# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ADAPTIVE SPECTRUM AND SIGNAL ALIGNMENT, INC., <br><br> Plaintiff, <br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendant. | Case No. 2:24-cv-00124-JRG-RSP <br><br> JURY TRIAL DEMANDED <br><br> **REDACTED COPY** |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS PARTIALLY OPPOSED AND PARTIALLY UNOPPOSED MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS**

## **TABLE OF CONTENTS**

I.    GOOD CAUSE EXISTS FOR ASSIA'S NEW EVIDENCE AMENDMENTS ............... 1

    A.    Good Cause Exists for the '108 New Evidence Amendments ............................... 1

    B.    Good Cause Exists for the '996/'313 New Evidence Amendments ....................... 2

II.    GOOD CAUSE EXISTS FOR ASSIA'S P.R. 3-1(F) AMENDMENT ............................ 4

# TABLE OF AUTHORITIES

**Cases**

*Intell. Ventures II LLC v. FedEx Corp.*,
  No. 2:16-CV-00980-JRG, 2017 WL 4812436 (E.D. Tex. Oct. 25, 2017) .................................. 6

*KAIST IP US LLC v. Samsung Elecs. Co.*,
  No. 2:16-CV-01314-JRG-RSP, 2018 WL 1806765 (E.D. Tex. Apr. 17, 2018) ......................... 2

*Mojo Mobility, Inc. v. Samsung Elecs. Co.*,
  No. 2:22-CV-00398-JRG-RSP, 2024 WL 3332874 (E.D. Tex. July 8, 2024) .......................... 5

*Motion Games, LLC v. Nintendo Co.*,
  No. 6:12-CV-878-RWS-JDL, 2015 WL 1774448 (E.D. Tex. Apr. 16, 2015) ........................... 4

*WellcomeMat, LLC v. Aylo Holdings S.a r.l.*,
  No. 2:23-CV-00483-JRG-RSP, 2024 WL 3586431 (E.D. Tex. July 29, 2024) ........................ 5

I.  **GOOD CAUSE EXISTS FOR ASSIA'S NEW EVIDENCE AMENDMENTS**

Charter offers no expert declarations to rebut the explanations provided by ASSIA's experts as to why the late-produced documents were necessary to support the proposed amendments, relying solely on attorney argument. Nor does Charter dispute that it was delinquent and only agreed to substantially complete its production of technical materials *after* months of pressure from ASSIA. Mot. at 4-5; Dkt. 115-1 (Glauser Decl.) ¶¶27-32; Dkt. 54, 54-1, 54-2. Although Charter stipulated to complete production by January 31, 2025, it ultimately delayed until March 28, 2025, producing more than ▮▮▮▮ documents after further efforts by ASSIA to seek compliance. *Id.* This underscores ASSIA's diligence, the reasonableness of ASSIA's positions, and the prejudice caused by Charter's delayed production.

A.  **Good Cause Exists for the '108 New Evidence Amendments**

Charter does not dispute that it produced new, material evidence for the '108 Patent *for the first time* on January 21 & 31, 2025, including documents highly relevant to claim limitations that ▮▮▮▮.[1] Mot. at 7. ▮▮▮▮, Charter argues that ASSIA could have ascertained this information in publicly available documents, attaching three "public-facing ▮▮▮▮ related documents." Opp. at 2-3. But Charter does not, because it cannot, show where these third-party articles reveal details about ▮▮▮▮ without which ASSIA could not have demonstrated that ▮▮▮▮ satisfies the limitation of the '108 Patent. *Compare* Dkt. 115-15 with Dkt. 130-2, 130-3, 130-4.

---

[1] Charter does not dispute that it first produced in January 2025 documents highly disclosing the WAN and LAN communication layers related to ▮▮▮▮. Charter states in its Opposition that "Charter does not use the accused ▮▮▮▮ n features." Opp. at 4; Dkt. 130-7 (supplemental response to No. 5). Absent additional evidence, ASSIA will not pursue the New Evidence Amendments regarding ▮▮▮▮.

1

### B. Good Cause Exists for the '996/'313 New Evidence Amendments

**First**, Charter does not dispute that it produced new, material evidence, including critical source code, relevant to the '996/'313 Patents in January and March 2025. *See* Opp. at 5-7; Mot. at 8-10. Charter does not dispute the fact that because the Accused PMA Products/Services ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *Id.* And Charter does not dispute that ASSIA explicitly notified Charter that it would supplement when Charter finally produced such information. *Id.*

**Second**, with respect to the '996 Patent, ASSIA is not introducing a "brand new theory concerning ███████████.'" Opp. at 4, 5, 9. On the contrary, Claim 20 is directed to a communication system comprising several components which are all communicatively coupled to generate and facilitate the communication of various claimed signals, including an input signal and a retransmission overhead control signal. Dkt. 115-26 ¶17. The '996 New Evidence Amendments refine ASSIA's previously disclosed theory by identifying the use of ██████ as ***examples*** of ████████████████████████████ Dkt. at 5. In other words, the use of ██████████ is a way by which ████████████████████ which is how ASSIA's previously described theory works. This is not a new theory claiming ██████ ██████████ are something different. *See* Dkt. 115-26 ¶¶25-26, 30. Thus, these amendments would not expand the size or complexity of the case. *See KAIST IP US LLC v. Samsung Elecs. Co.*, No. 2:16-CV-01314-JRG-RSP, 2018 WL 1806765, at *4 (E.D. Tex. Apr. 17, 2018).

**Third**, with respect to the '996 Patent, Charter argues that the ████████████████ ██████████" *alone* was enough to show how ████████████ are used with the ████████████ Opp.

2

at 6. Not true. The new evidence revealed, for the first time, critical operations of ▓▓▓ including: ▓▓▓

▓▓▓

▓▓▓

▓▓▓. *See* Mot. at 11. Although evidence for the use of ▓▓▓ to the CMTS is found in other parts of the source code, review of source code for ▓▓▓ (which was among the newly produced source code) revealed how such ▓▓▓ are generated to ▓▓▓ as required by Claim 20. *Id.*; Dkt. 115-26 (Pooley Decl.) ¶¶24-25, 30. Charter proffered no expert rebuttal.

**Fourth**, Charter mistakenly asserts that Dr. Pooley's declaration misrepresented the files in a folder titled ▓▓▓" claiming the folder contained ▓▓▓ ▓▓▓ Opp. at 6-7. Charter is incorrect. The declaration did ***not*** represent that ***all*** the files pertained to PMA. Rather, it explicitly referred to "documentation across PMA and other communication systems," such as Wi-Fi. Dkt. 115-26 (Pooley Decl.) ¶26. Dr. Pooley correctly declared under penalty of perjury that the folder titled "▓▓▓ ▓▓▓ specifically, example usages of ▓▓▓. *Id.* Charter presented no evidence contradicting Dr. Pooley's declaration and proffered only attorney argument.

**Fifth**, regarding the '313 Patent, Charter asserts the ▓▓▓

▓▓▓

▓▓▓" Opp. at 8. However, these references, even if they disclose certain details, ▓▓▓ ▓▓▓ *downstream* PMA. Charter does not address ASSIA's position that the new

3

evidence revealed for the first time critical operations regarding *upstream* PMA data collection. *See* Mot. at 11.

**Sixth,** contrary to Charter's assertion, ASSIA is not presenting a wholly new theory concerning the '313 Patent. Opp. at 7-8. As explained, ASSIA has mapped how ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ for claim 19. Mot. at 12. Charter does not dispute that it had not produced information about how the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Based on the new evidence, ASSIA was finally able to ***confirm*** some ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.*; Dkt. 115-26 (Pooley Decl.) ¶¶24-25, 30. The case scope and complexity thus remain the same.[2]

**Finally**, Charter disagrees with ASSIA and its experts' opinions, asserting that the Amendments are not important and futile because they do not establish infringement. *See* Opp. at 4, 9. However, infringement contentions are not "a forum for adjudicating the merits." *Motion Games, LLC v. Nintendo Co.,* No. 6:12-CV-878-RWS-JDL, 2015 WL 1774448, at *3 (E.D. Tex. Apr. 16, 2015). Charter's futility arguments do not negate the importance of these Amendments.

## II. GOOD CAUSE EXISTS FOR ASSIA'S P.R. 3-1(F) AMENDMENT

ASSIA has not waived the right to identify its former CloudCheck software product as having practiced the asserted claims of the '398/'313 and '654 Patents.[3] In *Mojo Mobility*, the plaintiff served supplemental interrogatory responses after the close of fact discovery and after initial expert reports have been served. *Mojo Mobility, Inc. v. Samsung Elecs. Co.*, No. 2:22-CV-00398-JRG-RSP, 2024 WL 3332874, at *1 (E.D. Tex. July 8, 2024). The court found that the

---

[2] Further, with respect to the '313 patent, ASSIA agrees with Charter that the "MAC address" is "simply a unique identifier of a device." Opp. at 9. And ASSIA is not pursuing an infringement theory based on a contrary understanding of a MAC address.

[3] Page 2 of ASSIA's motion contains a typographical error and should have listed the '654 Patent.

4

untimely intervening response that plaintiff's own products did *not* practice the patents "cut off" their P.R. 3-1(f) preservation of the right to assert otherwise. *Id.* at *3. In contrast, ASSIA has not owned CloudCheck since April 2022. Dkt. 133. And while ASSIA's CEO and CTO were employed at ASSIA in 2022, they were inventors of only the '996 and '108 patents, respectively; CloudCheck practiced claims of the '398/'313 and '654 patents. Dkt. 115-1 ¶36; Dkt. 130-15; Dkt. 32-3. Unlike *Mojo,* ASSIA's discovery responses were timely, not inconsistent with its original P.R. 3-1(f) disclosure, and served well before the close of fact discovery and months before start of expert discovery and should be allowed. *See WellcomeMat, LLC v. Aylo Holdings S.a r.l.,* No. 2:23-CV-00483-JRG-RSP, 2024 WL 3586431, at *2 (E.D. Tex. July 29, 2024) (allowing P.R. 3-1(f) amendment eight weeks after defendant's accusation and plaintiff's own investigation).

ASSIA has not withheld information regarding practicing products. Opp. at 15. ASSIA identified ▮▮▮▮▮▮▮▮ as having knowledge about CloudCheck in October 2024. *See* Dkt. 133; 133-2, 133-3, 133-4. ASSIA advised its corporate witness that he was "free" to answer questions about practicing products so long as they do not disclose privileged communications and did not object when Charter asked about whether the products sold to DZS, including CloudCheck, practiced the patents. Dkt. 117-4; Dkt. 133-3. ASSIA produced the technical documents supporting its contentions CloudCheck practiced the patents before December 2024. Dkt. 115-1 ¶36.

Moreover, Charter itself has recently alleged that ASSIA's former CloudCheck product practiced, among others, the '398/'313 Patents. *See* Ex. A (Charter's 4/24/25 *Arctic Cat* letter). Accordingly, Charter will not be prejudiced by ASSIA's response made during fact discovery and months before expert discovery. *See Intell. Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2017 WL 4812436, at *2 (E.D. Tex. Oct. 25, 2017).

| | |
|---|---|
| May 8, 2025 | Respectfully submitted,<br><br>/s/ *Nicole Glauser*<br>Robert F. Kramer<br>CA Bar No. 181706 (Admitted E.D. Texas)<br>rkramer@krameralberti.com<br>David Alberti<br>CA Bar No. 220265 (Admitted E.D. Texas)<br>dalberti@krameralberti.com<br>Sal Lim<br>CA Bar No. 211836 (Admitted E.D. Texas)<br>slim@krameralberti.com<br>Russell S. Tonkovich<br>CA Bar No. 233280 (Admitted E.D. Texas)<br>rtonkovich@krameralberti.com<br>Hong S. Lin<br>CA Bar No. 249898 (Admitted E.D. Texas)<br>hlin@krameralberti.com<br>Jeremiah A. Armstrong<br>CA Bar No. 253705 (*pro hac vice*)<br>jarmstrong@krameralberti.com<br>**KRAMER ALBERTI LIM**<br>**& TONKOVICH LLP**<br>950 Tower Lane, Suite 1725<br>Foster City, CA 94404<br>Telephone: (650) 825-4300<br>Facsimile: (650) 460-8443<br><br>Nicole Glauser<br>Texas State Bar No. 24050694<br>nglauser@krameralberti.com<br>**KRAMER ALBERTI LIM**<br>**& TONKOVICH LLP**<br>500 W 2nd Street, Suite 1900<br>Austin, TX 78701<br>Telephone: (737) 256-7784<br>Facsimile: (650) 460-8443<br><br>Melissa Richard Smith<br>Texas State Bar No. 24001351<br>melissa@gillamsmith.com<br>**GILLAM & SMITH, LLP**<br>303 South Washington Ave.<br>Marshall, TX 75670<br>Telephone: (903) 934-8450<br>Facsimile: (903) 934-9257 |

*Attorneys for Plaintiff*
*Adaptive Spectrum and Signal Alignment, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel of record who are deemed to have consented to electronic service on May 8, 2025.

/s/ *Nicole Glauser*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5, I hereby certify that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 22) entered in this case on July 22, 2024.

/s/ *Nicole Glauser*