# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>*Defendant*. | Civil Action No. 2:22-cv-00125-JRG |

## NOTICE OF REDACTION

Pursuant to the Court's Order (Dkt. No. 421), Plaintiff Entropic Communications, LLC and Defendant Charter Communications, Inc. hereby file a redacted public version of the Court's Memorandum Order Denying Charter's Motion to Exclude the Expert Opinions of Stephen Dell (Dkt. No. 368). The parties' agreed redactions to Dkt. No. 368 are attached as Exhibit A to this Notice.

Dated: January 4, 2024

Respectfully submitted,

*/s/ James Shimota*
James Shimota
Jason Engel
George Summerfield
Katherine L. Allor
Samuel P. Richey
Ketajh Brown
**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Tel: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com
jason.engel@klgates.com
george.summerfield@klgates.com
katy.allor@klgates.com

1

# EXHIBIT A

Case 2:22-cv-00125-JRG Document 428-1 Filed 04/25/23 Page 4 of 10 PageID #: 23768



**MEMORANDUM ORDER**

Before the Court is Defendant Charter Communications, Inc.'s Motion to Exclude the Expert Opinions of Stephen Dell. (Dkt. No. 169.) Plaintiff Entropic Communications, LLC opposes the motion. (*See* Dkt. No. 203.) For the following reasons, the motion is **DENIED**.

## I. BACKGROUND

Mr. Stephen Dell is Entropic's damages expert. He opines that Entropic is entitled to $1.67 billion dollars as of June 30, 2023.

### A. Entropic's Acquisition of the Patents-in-Suit

Entropic purchased over 500 patents and patent applications from MaxLinear, Inc. ("MaxLinear") on March 31, 2021 pursuant to a Patent Purchase Agreement ("PPA"), including the six patents Entropic asserts here. (Dkt. No. 169 at 1.) The PPA provides that Entropic will pay $5 million for the patents and will split any net proceeds from the patents with MaxLinear— Entropic keeps 60% and MaxLinear takes 40%. (*Id.*)

1

original).) It is therefore proper to attribute 100% of the technical value of the ███ to the '682 and '690 Patents, Entropic argues. (*Id.* at 7–9.)

In reply, Charter argues that Dell did not disclose any analysis that led him to conclude that 10% of the value should be assigned ███████. (Dkt. No. 239 at 2.)

In sur-reply, Entropic argues that Dell relied on Dr. Souri's opinion that the '682 Patent's contribution is "substantially all" of the value and that the '690 Patent's contributions are "a minor piece of the technical innovation." (Dkt. No. 281 at 2–3.)

The Court finds that Charter's arguments go to weight, and not admissibility. Whether or not technologies should have been included in the apportionment is for the jury to decide. Dell's opinions in this regard are clearly supported by Dr. Souri. (*See* Dkt. No. 203 at 8.) Similarly, Dell's opinion that 10% of the value should be assigned ███████ is also supported by Souri's testimony that opinion that the '682 Patent's contribution is "substantially all" of the value and that the '690 Patent's contributions are "a minor piece of the technical innovation." (Dkt. No. 281 at 2–3.) Any daylight between Dell's and Dr. Souri's testimonies should be elucidated on cross. Exclusion is not the appropriate remedy.

### iv.    The '362 Patent (Theory 3)

Charter argues that Dell's opinion that there is ███ in savings in unreliable when Dell "(i) ██████████████████████████████████████████████████████████████ (Dkt. No. 169 at 12.)

In response, Entropic notes that Dell relied on Dr. Kramer to select the best comparable devices to isolate the incremental value of the '362 Patent. (Dkt. No. 203 at 9.) In turn, Entropic argues, Dr. Kramer's analysis was detailed and thorough. (*Id.*) Charter's argument that Dell should have used different devices concerns which evidence is "best" and thus goes to weight, not

11

admissibility, Entropic contends. (*Id.* (citing *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00070-JRG-RSP, 2020 WL 4057640, at \*5 (E.D. Tex. July 20, 2020).)

In reply, Charter argues that Dell has provided no justification for why 100% of the purported cost savings between the two DVR models would be attributed to the '362 Patent. (Dkt. No. 239 at 3.) Charter also asserts that Entropic (and Dell) have chosen two new models that show a higher cost savings. (*Id.*)

In sur-reply, Entropic argues that Dell has simply supplemented his expert report based on new documents and deposition testimony from third-party ███████. (Dkt. No. 281 at 3.) Nonetheless, Entropic contends, Dell's supplement continues on the same premise. (*Id.*) Moreover, Entropic argues that Dell has appropriately relied on Dr. Kramer's report regarding the benefits of the '362 Patent. (*Id.*) Dr. Kramer specifically opines that he "would expect similar cost savings across all set-top boxes." (*Id.* at 3–4.)

Again, the Court is not persuaded by Charter's arguments. As an expert, Dell is entitled to rely on the opinions of other experts, such as Dr. Kramer. In turn, Dr. Kramer opines that he "would expect similar cost savings across all set-top boxes," and that the "███████████████████ ██████████████████████████████████████████████████ ███████████████ *Id.* at 3–4.) Neither of Dr. Kramer's opinions have been challenged or struck, and Charter has otherwise not addressed them. As such, Dell's opinions maintain sufficient basis in fact to be presented to the jury. Robust cross examination is the best mechanism by which to expose any inconsistencies between Dell's opinions and other facts.

### B. Dell's Lump Sum Opinions Based on Infringement of Method Claims

Charter argues that Dell's lump sum opinions for the method claims are unreliable because "(i) he does not confine his analysis to only those CMTSs that have actually performed the claimed

12

method, and (ii) he uses static projections for calculating royalties through patent expiration." (Dkt. No. 169 at 12–14.)

In response, Entropic argues that the Federal Circuit has "expressly endorsed" lump sum reasonable royalties. (Dkt. No. 203 at 10 (citing *Lucent Techs., Inc. v Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)).) Moreover, Entropic contends that Dell's opinion that the parties would have decided on a lump sum license (over a running royalty) is based on considerable evidence. (*Id.* at 10–11.)

In reply, Charter argues that it has ████████████████████████████████████, meaning that Dell's opinions must be unreliable. (Dkt. No. 239 at 3.) Further, Charter argues that Dell's opinions are contrary to the Federal Circuit's guidance: a patentee "can only receive infringement damages on those devices that actually performed the patented method during the relevant infringement period." (*Id.* at 3–4 (quoting *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1359 (Fed. Cir. 2009)).)

In sur-reply, Entropic argues that the law requires an analysis of the extent of actual and anticipated use, which Dell does. (Dkt. No. 281 at 4 (citing *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014) ("But [the district court] did err in treating the profits IPC actually earned during the period of infringement as a royalty cap. That treatment incorrectly replaces the hypothetical inquiry into what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have happened.")).)

The Court finds that Dell may present his lump sum opinions to the jury. Dell's opinion that the parties would have selected a lump sum payment over a running royalty is sufficiently supported. Moreover, such an opinion is permissible. *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 412 (Fed. Cir. 2018) ("we have held that a jury may award

a lump-sum, paid-in-full royalty in lieu of a running royalty on future sales"). Finally, Charter's unilateral decision to ██████████████ cannot render Dell's opinions inadmissible. Indeed, Dell addresses Charter's █████████████. *See* Dell Supp. Rep. at ¶¶ 53–55.

### C. Dell's Other Lump Sum Opinions

Charter argues that Dell's other lump sum opinions, the ones that do not depend on infringement of method claims, should be excluded because his projections are static and therefore not "realistic." (Dkt. No. 169 at 14–15 (quoting *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2018 WL 3089701 at *7 (E.D. Tex. Mar. 7, 2018)).)

In response, Entropic argues that Dell's use of a static projection is reliable because a "static projection accounts for potential increases and decreases by holding the numbers constant." (Dkt. No. 203 at 11.)

In reply, Charter argues that Dell's uses of a static projection "ignore[s] the constantly-evolving cable and internet industry." (Dkt. No. 239 at 4.) Charter re-urges that "Dell's static projection could not possibly be 'realistic projections of future sales' in this industry." (*Id.* at 4–5 (quoting *Ericsson*, 2018 WL 3089701 at *7).)

In sur-reply, Entropic argues that Charter "cites no case law for the extraordinary proposition that lump sum royalties are inherently unreliable in the cable industry." (*Id.*) Finally, Entropic re-urges that Dell's opinion that the parties would have agreed to a lump sum payment is supported by sufficient evidence. (*Id.* at 4–5.)

The Court finds that Dell's use of a static projection is not so unreliable as to warrant exclusion. Indeed, it is an assumption that Dell opines the parties would have made, but Dell is an economics expert and this is well within his expertise. Charter's complaints can be presented in the form of questions on cross.

### D. Dell's Application of a Benefit Share From the PPA

For all of the asserted patents, Dell's justification for a 60/40 profit split is based on the "benefit share" of "net monetization proceeds" from the PPA that "would allow the parties to recognize the business risk incurred by Charter in commercializing, building, and maintaining the network in which the patents at issue are implemented." (Dkt. No. 169 at 15 (citing Dkt. No. 169-2 at ¶ 387).)

Charter argues that these opinions should be excluded because Dell fails to cite to any facts, economic studies, or articles that would support his conclusion that the PPA is analogous. (*Id.*) Accordingly, Charter argues, "Dell's split is indistinguishable from the 25% rule of thumb that has been rejected by the Federal Circuit." (*Id.* (citing *Uniloc USA Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011)).)

In response, Entropic argues that Dell's use of the PPA to support the 60/40 split is reliable. (Dkt. No. 203 at 11–13.) Specifically, Entopic contends that the PPA is reliable because it involves two of the three parties in the hypothetical negotiation, and because it concerns the patents-in-suit. (*Id.* at 12.) Further, Entropic argues that the "book of wisdom," and "would acknowledge the distribution of monetization proceeds and sharing percentages of 60%/40% as a reasonable economic indicator and framework demonstrating Entropic's willingness to share or apportion Charter's incremental profits directly attributed to the use of the [patents]." (*Id.* (quoting Dkt. No. 169-2 at ¶¶ 446, 457, 475, 513).) Thus, Entropic argues, Dell's use of the 60/40 split is not akin to the 25% rule of thumb. (*Id.* at 12–13.)

In reply, Charter argues that the PPA is a non-analogous agreement, and Dell's reliance upon it is arbitrary. (Dkt. No. 239 at 5.)

In sur-reply, Entropic argues that Charter's arguments go to weight, not admissibility. (Dkt. No. 281 at 5.)

15

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that the Motion (Dkt. No. 169) should be and hereby is **DENIED**.

**SIGNED this 5th day of December, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

17