# EXHIBIT A

████████████████████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ADAPTIVE SPECTRUM AND SIGNAL ALIGNMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendant. | CASE NO. 2:24-cv-00124-JRG-RSP <br><br> **JURY TRIAL DEMANDED** |

**\*CORRECTED\*[1] PLAINTIFF'S OPPOSITION TO CHARTER'S
MOTION FOR LEAVE TO MODIFY THE SCHEDULING ORDER TO CONDUCT
LIMITED ADDITIONAL DISCOVERY (DKT. 358)[2,3]**

---

[1] This only change in this Corrected version is to fix a typo in the Introduction at 1, as explained in the concurrently filed Notice of Correction (Dkt. 363).

[2] Unless otherwise noted, all lettered exhibits herein refer to the exhibits submitted by Charter in support of its Motion (Dkt. 358) and all numbered exhibits refer to the exhibits attached to the Declaration of Nicole Glauser, dated June 5, 2026 ("Glauser Dec."), filed concurrently herewith in support of this Opposition brief.

[3] Nothing in this opposition waives, concedes, or modifies any argument or position ASSIA has taken in ASSIA's pending Motion to Strike Portions of Dr. Becker's Rebuttal Report (Dkt. No. 211) or in ASSIA's Opposition to Charter's Motion to Exclude Mr. Dell (Dkt. No. 236).

████████████████████████████████████

**TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................................1

II.   PROCEDURAL AND FACTUAL BACKGROUND ............................................2

III.  ARGUMENT ............................................................................................................3

    A.    Charter Has Not Shown Good Cause to Reopen Discovery Under Rule 16......................3

        1.    Charter's Own Timeline Shows It Was Not Diligent ████████████ ████████ or ████████████████████ ..........................................................3

        2.    Charter Has Not Shown that Its Proposed Supplementation Is Important Enough to Reopen Discovery ..............................................................................5

        3.    Reopening Discovery Would Severely Prejudice ASSIA ..............................................7

        4.    A Continuance Is Not Available to Cure the Prejudice ..............................................8

    B.    Charter's ████████████████████████████ Do Not Change the Lump-Sum Damages Analysis ..............................................................................9

        1.    The Lump-Sum Royalty Is Fixed at the Hypothetical Negotiation ..............................9

        2.    Charter's ████████████████████ Cannot Establish a ████████████████ for the November 2020 Lump-Sum Royalty ..............................................................12

    C.    Rule 26(e) Does Not Authorize the Supplemental Becker Report ..................................14

IV.   CONCLUSION ......................................................................................................15

████████████

## TABLE OF AUTHORITIES

**Cases**

*Aqua Shield v. Inter Pool Cover Team,*
774 F.3d 766 (Fed. Cir. 2014) ...................................................................................11, 13

*AstraZeneca AB v. Apotex Corp.,*
782 F.3d 1324 (Fed. Cir. 2015) .......................................................................................11

*Batiste v. Lewis,*
976 F.3d 493 (5th Cir. 2020) ..........................................................................................6, 8

*Crawford v. C.R. Bard, Inc.,*
No. 6:19-cv-00412, 2020 WL 2468771 (E.D. Tex. May 13, 2020) ...........................................9

*Doe v. Edgewood Independent Sch. Dist.,*
No. SA-16-CV-01233-OLG, 2018 WL 11602761 (W.D. Tex. Nov. 26, 2018) .........................8

*Enplas Display Device Corp. v. Seoul Semiconductor Co. Ltd.,*
909 F.3d 398 (Fed. Cir. 2018) ...................................................................................11, 12

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.,*
No. 2:22-cv-00125-JRG-RSP (E.D. Tex. Nov. 27, 2023)................................................6, 12, 14

*G+ Commc'ns, LLC v. Samsung Elecs. Co.,*
No. 2:22-cv-00078-JRG, 2024 WL 896343 (E.D. Tex. Mar. 1, 2024) ....................................10

*Gauthier v. Union Pac. R.R. Co.,*
No. 1:07-CV-12 (TH/KFG), 2009 WL 10676647 (E.D. Tex. Mar. 10, 2009)............................4

*Gen. Elec. Cap. Bus. Asset Funding Corp. v. S.A.S.E. Mil. Ltd.,*
No. SA-03-CA-189-RF, 2004 WL 5495589 (W.D. Tex. Oct. 8, 2004)...................................15

*Genova v. City of Glen Cove,*
No, 13-cv-4088-JMA-SIL, 2015 WL 6143718 (E.D.N.Y. Oct. 19, 2015) ...............................9

*Grain Processing Corp. v. Am. Maize-Prods. Co.,*
185 F.3d 1341 (Fed. Cir. 1999) ...................................................................................13, 14

*Interactive Pictures Corp. v. Infinite Pictures, Inc.,*
274 F.3d 1371 (Fed. Cir. 2001) ...................................................................................10, 11

*Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
No. 17 CIV. 6221 (KPF) .................................................................................................9

*Lucent Techs., Inc. v. Gateway, Inc.,*
580 F.3d 1301 (Fed. Cir. 2009) ..............................................................................1, 10, 11

*Newberry v. Disc. Waste, Inc.*,
   No. 4:19-cv-00147, 2020 WL 363775 (E.D. Tex. Jan. 22, 2020) ...............................................8

*O'Driscoll Constructors, Inc. v. EMCASCO Ins. Co.*,
   No. 2:19-cv-00699, 2022 WL 444210 (D. Utah Feb. 14, 2022) ................................................9

*Pantech Corp. v. OnePlus Tech. (Shenzhen) Co.*,
   No. 5:22-cv-00069-RWS (E.D. Tex. Sept. 12, 2024) ............................................................5, 7

*Personal Audio, LLC v. Apple, Inc.*,
   No. 9:09-cv-00111-RC, 2011 WL 3269330 (E.D. Tex. July 29, 2011) ....................................10

*Reliance Ins. Co. v. Louisiana Land & Expl. Co.*,
   110 F.3d 253 (5th Cir. 1997) ...............................................................................................3, 8

*Riles v. Shell Expl. & Prod. Co.*,
   298 F.3d 1302 (Fed. Cir. 2002) ...............................................................................................11

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*,
   315 F.3d 533 (5th Cir. 2003) .....................................................................................................3

*Smart Path Connections, LLC v. Nokia of Am. Corp.*,
   No. 2:22-CV-0296-JRG-RSP, 2024 WL 992147 (E.D. Tex. Mar. 6, 2024) ..............................7

*Snyders Heart Valve LLC v. St. Jude Med. S.C., Inc.*,
   No. 18-cv-2030 (JRT/DTS), 2020 WL 13190009 (D. Minn. July 1, 2020)..............................15

*Zilberman v. CarOffer, LLC,*
   No. 4:15-cv-589 2016 WL 3060081 (E.D. Tex. May 31, 2016)................................................9

**Rules**

Fed. R. Civ. P. 16 ......................................................................................................................1, 9

Fed. R. Civ. P. 26(e) ...............................................................................................................14, 15

████████████████████████████████

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| ASSIA or Plaintiff | Plaintiff Adaptive Spectrum and Signal Alignment, Inc. |
| Charter or Defendant | Defendant Charter Communications, Inc. |
| '313 Patent | U.S. Patent No. 11,770,313 |
| PMA | Profile Management Application |
| ████ | █████████████ |
| NIA | Non-Infringing Alternative |
| Mot. | Defendant Charter Communications, Inc.'s Opposed Motion for Leave to Modify the Scheduling Order to Conduct Limited Additional Discovery (Dkt. No. 358) |

## I.     INTRODUCTION

Charter's motion attempts to turn its claimed ████████████████████████ into a late damages do-over. Charter argues that the ██████████████ forecloses Mr. Dell's damages calculation and asserts that its ██████████████ eliminates infringement. That is not supplementation. It is an attempt to add new technical facts and a new damages theory on the eve of trial. Rule 16 requires good cause, and Charter has none.

This case does not involve new third-party evidence or a late ASSIA production. Charter controlled the relevant facts for months, disclosed none of them while expert discovery and pretrial proceedings continued, and now seeks to reopen the schedule for its own benefit. Nothing about that sequence reflects diligence. The requested relief would also severely prejudice ASSIA. Granting Charter's motion would result in substantial additional discovery, supplemental technical and damages expert reports, and renewed pretrial motion practice. That sequence cannot be completed in the time remaining before trial.

Nor can Charter justify reopening the schedule by claiming that the proposed evidence would eliminate ASSIA's damages case. Both sides' damages experts used a lump-sum framework tied to the parties' November 2020 hypothetical negotiation. Charter's ██████████████ ████████████, and its ██████████████████████, do not retroactively rewrite that bargain. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009) ("[t]here is no provision for buyer's remorse"). That is especially true where Charter offers only a plan formed during litigation and a statement of present intent, not a binding commitment or ████████ ██████████, and Charter's ██████████████████ reinforces why that distinction matters. The proposed evidence therefore does not supply the importance showing that Rule 16 requires.

Rule 16 does not allow a party to withhold facts until they become useful enough to deploy in litigation and then reopen the schedule in an effort to reduce its damages exposure.

1

████████████████████████████████████████████████████████

## II.     PROCEDURAL AND FACTUAL BACKGROUND

ASSIA filed this action on February 21, 2024, accusing Charter's PMA of infringing the '313 patent. Fact discovery closed on May 13, 2025; opening and supplemental opening expert reports were served on May 20 and September 26, 2025; rebuttal expert reports were served on October 24, 2025; and expert discovery closed on November 12, 2025.[4] Dkts. 96 & 186. Trial was set for March 16, 2026, then reset to April 13, 2026 and then May 18, 2026, and is currently set for July 13, 2026.

Charter served six rounds of supplemental responses to ASSIA's interrogatories on NIAs, the last on May 13, 2025. In its responses, Charter identified several generic NIAs, including ████



Ex. 4 at 96, 113-115. The responses did not disclose any specific ███████████████ ████████████████████████████ establishing the availability or feasibility of ███████████████ and ███████████████ at all. *Id.*; *see also* Dkt. 211 at 6.

The damages framework in the existing expert record is settled. Both experts agree the hypothetical negotiation date for the '313 patent is November 24, 2020; the '313 patent expires November 10, 2031; and the parties at the hypothetical negotiation would have selected a lump-sum royalty covering Charter's ███████████████████████ through patent expiration. Ex. 2 (Dell Rpt.) ¶¶ 24, 87-89, 581-604; Ex. 3 (Becker Rpt.) ¶¶ 18, 69, 122, 163, 177, 287.

The Court held pretrial conferences on February 20 and March 4, 2026.

Not until May 11, 2026—twelve months after fact discovery closed, more than six months after rebuttal expert reports were served, and less than two months before the July 13, 2026 trial

---

[4] The deposition of the parties' technical experts Drs. Souri and Almeroth, took place after the close of Expert Discovery on November 21 and 24, respectively. Dkt. 208.

date—did Charter advise ASSIA *for the first time* that it was ███████ or that it would

allegedly ████████████████████████████████ Ex. 5.

## III.    ARGUMENT

### A.    Charter Has Not Shown Good Cause to Reopen Discovery Under Rule 16

Modification of a scheduling order requires good cause and a showing of diligence by the

movant. FED. R. CIV. P. 16(b)(4); *Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253,

257 (5th Cir. 1997). Under the Fifth Circuit's four-factor test, each factor weighs against Charter.

*See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003).

#### 1.    Charter's Own Timeline Shows It Was Not Diligent in ████████ ██████████ or ██████████████

The limited timeline Charter provides rules out any showing of good cause, even if all of

Charter's ████ related activities occurred after the close of fact discovery.[5] According to Charter,

that timeline is as follows: ████████████████████████████████

(Dkt. 358-9 (Stafford Decl.) ¶ 6), at or shortly after the May 2025 close of fact discovery in this

case. Sometime ████████████████████████████, Charter ████████████████

and then began ████████████████████████████████ (*id*.), while

simultaneously serving expert reports in May, September, and October 2025 and completing

expert discovery in November 2025. ████████████, Charter ████████████████

████████████████████████████████████████████████

████ *Id*. ¶ 7. ████████████████, Charter had decided to ████████████████

████████████████████████████████████. *Id*. ¶ 9. That was before the Court's

---

[5] Charter's identification of ████████████████████████ likely understates when the relevant decisions began, as the underlying decisions, approvals, vendor selection, technical specifications, and budget commitments that culminated in the ████████████████t were almost certainly underway before ████████ and thus before the close of fact discovery.

3

█████████████████████████████████████████████████████

February 20, 2026 pretrial conference. Charter then decided to ████████████

████████ and, ██████████████████████████████████████████████

███. *Id.* ¶ 10. At minimum, ██████████ was underway before and after the Court's March 4,

2026 pretrial conference.

Throughout these ████████████████████████████████████████████

Charter said nothing. It did not disclose any of these facts until just a few weeks ago. That silence

is the opposite of diligence. *See Gauthier v. Union Pac. R.R. Co.*, No. 1:07-CV-12 (TH/KFG),

2009 WL 10676647, at 4-5 (E.D. Tex. Mar. 10, 2009) (denying motion for leave to reopen

discovery where plaintiff "did not institute the discovery requests at issue in their motion for leave

until approximately three months" after learning of relevant information).

Charter contends that ██████████████ did not require disclosure because ████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

Mot. at 7. That framing relies on Charter's after-the-fact characterization of the work rather than

on any valid explanation for its failure to disclose. Diligence does not turn on when Charter decided

the information was useful enough to deploy in litigation. It turns on when Charter had information

responsive to the interrogatories, document requests, and expert issues it now seeks to supplement.

Here, Charter had some of the operational information it now seeks to use for more than a year

and continued to receive related information through the ████████████████████

████████ yet did not disclose it until May 2026.

Charter's argument that its requested supplementation merely documents a previously

generically disclosed NIA—*i.e.*, ██████████—does not change the diligence analysis.

Mot. at 4, 8. Charter's ██████████████████████ were never disclosed in

4

██████████████████████████████████████████

Charter's interrogatory responses, its expert reports, or otherwise. As discussed more fully below, those facts are categorically different from ███████████ Charter previously disclosed. *See* Section B(2).

The first factor weighs decisively against reopening discovery.

### 2. Charter Has Not Shown that Its Proposed Supplementation Is Important Enough to Reopen Discovery

Charter characterizes the claimed importance as follows: "██████████████████████

███████████, ASSIA can no longer seek [its claimed] damages" because those damages would be reduced by an "order of magnitude." Mot at 1, 8-9. But that assertion is both disputed and conclusory, not a Rule 16 showing. As explained in Section B(1), Charter's claimed reduction depends on treating the royalty as though it were a running royalty that rises or falls with later actual use. Both sides' experts, however, used a lump-sum framework, which values the parties' November 2020 bargain based on information available at that time, not later operational developments. And a new NIA that was not available at the time of the hypothetical negotiation is not important because it could not have informed what the parties would have agreed to at the hypothetical negotiation. *See* Ex. 10: Order at 2, *Pantech Corp. v. OnePlus Tech. (Shenzhen) Co.*, No. 5:22-cv-00069-RWS (E.D. Tex. Sept. 12, 2024), ECF 377 (finding alleged importance "overstated" where the new license was obtained years after the hypothetical negotiation date and negotiated during litigation).

Charter's reliance on forward-looking business intentions underscores the problem. Mr. Stafford's ████████████████████████████████████████

████████████████ appear in a litigation declaration, not in deposition testimony, a stipulation, or documents binding Charter against later reversion. Dkt. 358-9 (Stafford Decl.) ¶¶ 9-10. And Charter's prior actions illustrate why that matters.



During the *Entropic* litigation, Charter ████████████████████████

████████ Ex. 6 at CHARTER_ASSIA_00052421 at 0002. Internal documents produced in

this case show that, ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Ex. 8 at

CHARTER_ASSIA_00328925; *see also* Ex. 7 at CHARTER_ASSIA_00175423-439.[6] ███

████████████████████████████████████████ Charter's similar forward-

looking, untested, and nonbinding representation in this case cannot justify reopening discovery

and rewriting the expert record on the eve of trial.

Charter's argument that, without supplementation, ████████████████████

████████████ fares no better. Mot. at 10. That argument assumes the ████████████

is relevant to the damages theory Charter seeks to change, but again it is not. Nor can Charter

create good cause by announcing that its witnesses intend to offer the very testimony whose late

disclosure and admissibility are at issue. Mot. at 2, 5.

The Court need not decide every trial-admissibility issue now to deny Charter's request for

leave. It is enough that Charter's asserted importance depends on a legally unsupported use of the

late-disclosed facts. That is not enough to overcome Rule 16, especially given Charter's lack of

diligence and the prejudice reopening would cause. *Batiste v. Lewis*, 976 F.3d 493, 501 (5th Cir.

2020) (importance "cannot 'singularly override' the district court's enforcement of its scheduling

order"); *Smart Path Connections, LLC v. Nokia of Am. Corp.*, No. 2:22-CV-0296-JRG-RSP, 2024

---

[6] Charter has sought through other motions to exclude evidence of its ████████████████
(Dkts. 219 & 299), both of which ASSIA opposed based on the existing record. Dkts. 236 & 306.
The relevance only increases if the Court grants the present motion. ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

WL 992147, at *2 (E.D. Tex. Mar. 6, 2024) (ruling that alleged importance "cannot outweigh the lack of diligence," where movant waited until the eve of trial).

### 3.      Reopening Discovery Would Severely Prejudice ASSIA

Contrary to Charter's characterization, the requested supplementation is not merely "context" or background information about a disclosed NIA. Mot. 10. Charter's motion describes

████████████████████████████████████████████████████████

████████████████████. *Id.* at 3. Charter is belatedly seeking to inject technical, operational, and damages facts on which ASSIA has had no discovery. The prejudice is especially acute where, as here, Charter had asymmetrical access to the operational information it now seeks to use, leaving ASSIA without a comparable opportunity to investigate, test, or respond. Ex. 10: *Pantech* Order at 2 (denying reopening where the moving party had "asymmetrical access" to materials for months and the opposing party would need discovery to respond).

Charter's request is neither "narrow" nor meaningfully limited. *Id.* at 10. Charter never identifies the scope of the supplemental document production it seeks, including the custodians, date ranges, categories, volume, or technical systems involved. Additionally, Charter's position that ████████████████████████████████ (*id.* at 3) necessarily implicates ████████ ████████████████ and not merely damages. As a result, granting the motion would trigger a cascade of fact discovery, expert work, and motion practice the schedule does not accommodate. That work would include production and review of ████████████████████████ ████████████; production and review of Charter's internal documents and emails on ████ ████████████████████████ and ████████████████; depositions of Mr. Stafford and

other Charter witnesses; supplemental damages and technical expert reports and depositions; and renewed *Daubert*, motion *in limine*, and summary judgment practice.[7]

The Fifth Circuit has recognized that this kind of cascading work weighs heavily against modification. *Reliance*, 110 F.3d at 257-58; *see also Newberry v. Disc. Waste, Inc.*, No. 4:19-cv-00147, 2020 WL 363775, at *3 (E.D. Tex. Jan. 22, 2020) ("Courts within the Fifth Circuit recognize that making untimely, substantive changes to expert reports presents real prejudice to the other side, and courts routinely disallow litigants from making untimely disclosures"). Charter's cited case, *Doe v. Edgewood Independent Sch. Dist.*, is inapposite because it applied Rule 6(b)(1)(B)'s excusable-neglect standard and involved a trial still several months away. No. SA-16-CV-01233-OLG, 2018 WL 11602761, at 2-3 (W.D. Tex. Nov. 26, 2018). Ultimately, the prejudice factor favors ASSIA.

### 4.    A Continuance Is Not Available to Cure the Prejudice

Charter's continuance argument rests entirely on speculation that the July 13, 2026 trial setting may not hold because this case has not yet appeared on the Court's Order of Trials. Mot. at 6, 11. But a set trial date is not displaced by speculation about docket position, and Charter cites no authority allowing a possible docket congestion to supply good cause to reopen fact and expert discovery. Treating docket uncertainty as an available continuance would convert every unsettled trial order into an invitation to reopen expired deadlines.

Nor would the necessary continuance be modest. It would have to accommodate substantial discovery, expert work, and pretrial motion practice that the current schedule cannot absorb. The Fifth Circuit has affirmed denial of modification where supplementation would require new expert work and disrupt the trial date. *Reliance*, 110 F.3d at 257-58; *see also Batiste*, 976 F.3d at 501.

---

[7] ASSIA cannot identify the full scope of responsive discovery before Charter discloses the documents, source code, witnesses, and opinions it seeks to inject.

██████████████████████████████████████████

Charter's cited cases do not support a different result. *Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 17 CIV. 6221 (KPF), 2025 WL 1276505 (S.D.N.Y. May 2, 2025) and *O'Driscoll Constructors, Inc. v. EMCASCO Ins. Co.*, No. 2:19-cv-00699, 2022 WL 444210 (D. Utah Feb. 14, 2022), involved cases with no trial date set, not cases where a party asks the Court to treat an existing trial setting as effectively optional because the docket may later shift. And *Zilberman v. CarOffer, LLC,* No. 4:15-cv-589 2016 WL 3060081 (E.D. Tex. May 31, 2016), *Genova v. City of Glen Cove,* No, 13-cv-4088-JMA-SIL, 2015 WL 6143718 (E.D.N.Y. Oct. 19, 2015), and *Crawford v. C.R. Bard, Inc.*, No. 6:19-cv-00412, 2020 WL 2468771 (E.D. Tex. May 13, 2020) each involved diligent movants seeking discovery about information outside their control or discovered late despite diligence. Charter, by contrast, seeks to use its late-disclosed, ████████████████████████████ to its own benefit.

Because Charter controlled the relevant facts, failed to disclose them when they became responsive, and now seeks relief that would require reopening fact discovery, expert discovery, and pretrial motion practice, all four Rule 16 factors weigh against modification. The motion can be denied on that basis alone. But Charter's request also fails for an independent reason: its central damages premise is wrong as a matter of Federal Circuit law.

**B.     Charter's** ████████████████████████████████
**Do Not Change the Lump-Sum Damages Analysis**

Charter's motion rests on the premise that ████████████████████████████ ████████████████████████████████ meaning the damages set forth in the report of ASSIA's damages expert, Mr. Dell. Mot. at 1. That premise fails under Federal Circuit law.

**1.     The Lump-Sum Royalty Is Fixed at the Hypothetical Negotiation**

Mr. Dell and Dr. Becker reached different damages numbers, but they agreed on the structure. Both opined that, at the November 2020 hypothetical negotiation, the parties would have

9

███████████████████████████████████████████████████████████████

selected a lump-sum royalty covering Charter's ███████████████████████████ use through

patent expiration in November 2031. Ex. 2 (Dell Rpt.) ¶¶ 24, 87-89, 581-604; Ex. 3 (Becker Rpt.)

¶¶ 18, 69, 122, 163, 177, 287. Dr. Becker explained that ██████████████████████████████

█████████████████████████████████████████████████████████████████████ Ex. 3

(Becker Rpt.) ¶ 174. He further opined that the lump-sum structure was favored because ███

█████████████████████████████████████████████████████████████████████████

█████████████████████ *Id.* ¶ 177.

That consequence follows from the lump-sum structure. In *Lucent*, the Federal Circuit

explained that an upfront, paid-in-full royalty removes the licensee's ability to later "reevaluate

the usefulness, and thus the value, of the patented technology as it is used and/or sold by the

licensee." 580 F.3d at 1326. Once a lump-sum license is executed, the licensee must pay the agreed

amount "regardless of whether the technology is commercially successful or even used," and

cannot later seek a refund based on a subsequent decision not to use the technology. *Id.* As the

Federal Circuit put it, "[t]here is no provision for buyer's remorse." *Id.*; *see also G+ Commc'ns,

LLC v. Samsung Elecs. Co.*, No. 2:22-cv-00078-JRG, 2024 WL 896343, at *2, n.3 (E.D. Tex. Mar.

1, 2024); *Personal Audio, LLC v. Apple, Inc.*, No. 9:09-cv-00111-RC, 2011 WL 3269330, at *4,

n.4 (E.D. Tex. July 29, 2011).

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001) further

confirms the point. There, the infringer argued that damages based on pre-infringement projections

were unreliable because actual sales later fell short. 274 F.3d at 1384-85. The Federal Circuit

rejected that argument because actual underperformance is "irrelevant to [the infringer's] state of

mind at the time of the hypothetical negotiation," and because requiring projections to match later

10

████████████████████████████████████████████

sales would "eviscerate the rule that recognizes sales expectations at the time when infringement begins." *Id.* at 1385.

Charter's motion asks to do what *Lucent* and *Interactive Pictures* rejected. Charter seeks to reopen discovery so Dr. Becker can use Charter's ████████████████████████████████ to reduce a 2020 lump-sum royalty. Nothing in the lump-sum framework Charter's own expert adopted permits that reduction. The Federal Circuit's temporal-anchor rule is well established. A reasonable royalty must be tied to the time of infringement, not reconstructed through hindsight. *See Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334 (Fed. Cir. 2015). The "book of wisdom" doctrine does not permit Charter to avoid that rule. Even where later evidence may be considered, it is used to inform what the parties would have anticipated at the time of the negotiation. It cannot replace that forward-looking inquiry with a backward-looking account of what later happened. *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014). Here, Charter is not using later evidence to illuminate what the parties would have expected in November 2020. It is using its own post-suit conduct to attempt to impermissibly reduce the lump sum based on revised actual and projected post-negotiation use.

Charter's reliance on *Lucent* and *Enplas* is misplaced. Mot. at 10-11. *Lucent* did not authorize a post-hoc reduction of a lump-sum royalty based on a later decision not to use the patented technology. 580 F.3d at 1326. Although *Lucent* vacated the damages award on evidentiary grounds, it did so because the patentee failed to support the amount of the award with sufficient comparable-license evidence, not because a lump-sum royalty cannot cover anticipated future use. *Id.* at 1338. *Enplas* is likewise inapposite. It vacated a damages award based on sales of non-accused products, while recognizing lump-sum royalties based on projected future use of

11

accused products. *Enplas Display Device Corp. v. Seoul Semiconductor Co. Ltd.*, 909 F.3d 398, 411-12 (Fed. Cir. 2018).

The same authority also does not support Charter's attempt to use the ███████ ███████ to attack Mr. Dell's existing opinions. Charter contends that ASSIA can "no longer seek" Mr. Dell's lump-sum royalty because his projections are allegedly "not grounded in reality" and rest on "assumptions that are demonstrably false." Mot. at 1, 9. But, for the reasons described above, later actual and revised projected use does not render a lump-sum opinion inadmissible merely because it differs from projections made at the hypothetical negotiation. This Court reached the same conclusion in its *Entropic* Daubert Order involving Charter's PMA system, ruling that "Charter's unilateral decision to ████████████████████████ cannot render Dell's opinions inadmissible." Ex. 1: Memorandum Order at 12-14, *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:22-cv-00125-JRG (E.D. Tex. Dec. 5, 2023), ECF No. 368 (ECF No. 423 as redacted). The Court held Mr. Dell's lump-sum opinions on PMA-related patents "sufficiently supported" and permissible. *Id.*

Charter's claimed ████████████████ therefore cannot reduce the lump-sum royalty or render Mr. Dell's existing opinions unreliable or inadmissible. It also cannot supply good cause to reopen discovery for a supplemental Becker report aimed at those same improper uses.

2. **Charter's ███████████████████ Cannot Establish a █████ for the November 2020 Lump-Sum Royalty**

Whether Charter characterizes ███ as the NIA itself or as confirmation of a previously disclosed NIA's viability, the alleged alternative cannot reduce the lump-sum royalty unless it would have affected the parties' bargain at the November 2020 hypothetical negotiation. Under Federal Circuit law, an accused infringer relying on an NIA must show that the alternative was available and that the infringer had "all of the necessary equipment, know-how, and experience"

██████████████████████████████████████████

to implement it. *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1348, 1353 (Fed. Cir. 1999); *see also Aqua Shield,* 774 F.3d 772. Where, as here, both experts adopted a lump-sum royalty, the relevant question is what alternatives the parties would have considered in negotiating that lump sum, not whether Charter later developed a replacement years after the bargain was struck.

Charter's own timeline is incompatible with any claim that █████ would have informed that bargain. Charter implemented ████████████████████████████████████ ████████████████ According to Mr. Stafford's declaration, ████████████████████ ████████████████████████████████████ Dkt. 358-9 ¶ 6. ████████████████████████████████. *Id.* ████████████████████ ████████████████████████████████ *Id.* ¶¶ 9-10. ████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████. *Id.* ¶¶ 8. That timeline defeats any claim that █████ would have been part of the parties' November 2020 lump-sum bargain or that Charter then had the equipment, know-how, experience, and operational readiness to implement ████████████████████████

Charter's technical description confirms the fundamental nature of the alleged change. According to Charter, ████████████████████████████ ████████ Mot. at 3. ████████████████████████ ████████████████████████████████████ ████████████ *Id.,* 2-4. That █████████████ could not have been on the table at the November 2020 negotiation.

███████████████████████████████████████

This Court has rejected an analogous attempt by Charter to retrofit a post-hypothetical-negotiation event into an earlier negotiation in the prior *Entropic* litigation. Ex. 9: Report and Recommendation at 5, *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:22-cv-00125-JRG-RSP (E.D. Tex. Nov. 27, 2023), ECF No. 349. The *Entropic* hypothetical negotiation date was 2013, and Charter sought to rely on alternatives licensed in 2015. The Court held that there is no plausible "reconstruction [of an earlier hypothetical negotiation that could] result in an [later-licensed alternative] occurring any differently." *Id.* The same principle bars Charter's reliance on ████████████████████████████ to alter the November 2020 negotiation here.

Charter's separate argument that ████████████████████████████████ ██████████████████████████████████ does not change the analysis. Mot. at 8. The availability requirement is substantive, not a disclosure standard. Even a disclosed NIA must independently satisfy the requirement that Charter had the equipment, know-how, experience, and commercial ability to implement it at the relevant time. *Grain Processing*, 185 F.3d at 1353. Charter's interrogatory response stated only that Charter would rely on "forthcoming expert reports" and witnesses "to demonstrate the feasibility in implementing the above identified alternatives, including time and resources required." Ex. 4 at 102.

Put simply, ████ cannot supply the commercial and operational feasibility that Charter's ████████████████████████████████ left unestablished as of the November 2020 lump-sum negotiation. Nor can Charter use ██████████████████████ to rewrite the bargain the parties would have struck in 2020.

### C.    Rule 26(e) Does Not Authorize the Supplemental Becker Report

Rule 26(e) does not permit introducing new opinions after the disclosure deadline under the guise of a supplement, even where the opinions are characterized as "expansion of a theory already asserted." *Gen. Elec. Cap. Bus. Asset Funding Corp. v. S.A.S.E. Mil. Ltd.*, No. SA-03-CA-

██████████████████████████████████████████

189-RF, 2004 WL 5495589, at *2 (W.D. Tex. Oct. 8, 2004); *see also* FED. R. CIV. P. 26(e)(1)(A).

Dr. Becker's report did not opine that ASSIA's damages should be reduced based on Charter's

claimed ████████████████████████████████████

████████████████████████ Those would be new opinions based on a new 2026 asserted

████████████████████████████████████████

████████████████████████ *See Snyders Heart Valve LLC v. St. Jude Med. S.C., Inc.*, No.

18-cv-2030 (JRT/DTS), 2020 WL 13190009, at *2 (D. Minn. July 1, 2020).

## IV.    CONCLUSION

For the foregoing reasons, ASSIA respectfully requests that the Court deny Charter's

motion.

If the Court concludes that Rule 26(e) requires Charter to supplement its written discovery

responses, including Interrogatory No. 3 concerning changes to the function or operation of the

accused instrumentalities, ASSIA does not oppose that limited supplementation. But the Court

should grant no further relief. It should deny Charter's request for supplemental document

production and deny Charter's request for a supplemental damages expert report from Dr. Becker.

The Court should also preclude Charter from referring to, eliciting testimony about,

introducing evidence concerning, arguing, or otherwise relying ████████████████████

████████████████████████████ That preclusion should apply to any effort

to support a new or revised damages theory, establish or confirm a NIA, attack the reliability of

Mr. Dell's existing damages opinions, present a new noninfringement theory, or elicit expert or

lay opinion testimony based on the late-disclosed information.

15

June 5, 2026

Respectfully submitted,

*/s/ Nicole Glauser*
Robert F. Kramer
CA Bar No. 181706 (Admitted E.D. Texas)
rkramer@kramerllp.com
**KRAMER LLP**
1133 Broadway, Suite 1510
New York, NY 10010
Telephone: (415) 419-1895

Nicole Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
**KRAMER LLP**
500 W 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (212) 363-1492

David Alberti
CA Bar No. 220265 (Admitted E.D. Texas)
dalberti@albertilim.com
Hong S. Lin
CA Bar No. 249898 (Admitted E.D. Texas)
hlin@albertilim.com
Andrew Hamill
CA Bar No. 251156 (Admitted E.D. Texas)
ahamill@albertilim.com
**ALBERTI LIM & TONKOVICH LLP**
950 Tower Lane, Suite 1725
Foster City, CA 94404
Telephone: (650) 825-4300
Facsimile: (650) 460-8443

Melissa Richard Smith
Tex. State Bar No. 24001351
melissa@gillamsmith.com
**GILLAM & SMITH, LLP**
303 South Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Attorneys for Plaintiff*
*Adaptive Spectrum and Signal Alignment, Inc.*

16

██████████████████████████████████████

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 5, 2026, and any confidential versions are being served by electronic mail.

*/s/ Nicole Glauser*

███████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

█████████████

17